UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROCCO G.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,<br><br>　　　　Defendant. | Civil Action<br>No. 22-01122 (CPO)<br><br>**OPINION** |

**Appearances:**

Alan H. Polonsky
POLONSKY AND POLONSKY
512 S White Horse Pike
Audubon, NJ 08106

　　*On behalf of Plaintiff.*

Allison Granger
SOCIAL SECURITY ADMINISTRATION, OFFICE OF PROGRAM LITIGATION
6401 Security Boulevard
Baltimore, MD 21235

　　*On behalf of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.*

**O'HEARN, District Judge.**

### I.　　INTRODUCTION

This matter comes before the Court on Plaintiff Rocco G.'s[1] appeal from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Defendant"). The

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

Court did not hear oral argument pursuant to Local Civil Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Acting Commissioner's decision.

## II. BACKGROUND

The Court recites herein only those facts necessary for its determination on this Appeal. On appeal, Plaintiff only challenges the Commissioner's determination as to his mental limitations and, thus, the background set forth below will focus on facts relevant to an analysis of the mental limitations only.

### A. Administrative History

Plaintiff filed an application for supplemental security income on May 20, 2019, alleging an onset date of disability beginning July 30, 2018. (AR 15). Plaintiff's claims were denied initially and on reconsideration. (AR 15). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which occurred on October 19, 2020, by telephone due to the COVID-19 pandemic. (AR 15). Plaintiff was represented by counsel and testified at the hearing. (AR 18). Vocational expert ("VE") Andrew Vaughn also testified. (AR 15, 57).

In a decision dated December 23, 2020, the ALJ found that Plaintiff was not disabled under the Social Security Act. (AR 36). Plaintiff's Request for Review by the Appeals Council was denied on March 1, 2021. (AR 1–6). Thus, the December 23, 2020, ALJ Decision became the final decision of the Commissioner. On March 2, 2022, Plaintiff filed the present action. (Compl., ECF No. 1).

### B. Plaintiff's Background and Testimony

At the time of the hearing, Plaintiff was thirty-two years old and living with his mother. (AR 218). Plaintiff testified that he was in special education classes for the entirety of his education. (AR 47). Plaintiff completed high school and testified that he can read and write but

that his mother assisted him in reading the correspondence from the Social Security Administration regarding this matter. (AR 47). He previously engaged in full-time work as a power washer, cleaning houses and sidewalks, and an automotive technician, doing general repairs and oil changes. (AR 47, 49). Plaintiff worked as an automotive technician for four years, but noted that he was employed by a friend and was eventually fired because he "messed up multiple times." (AR 64–65).

As for daily activities, Plaintiff testified that he is able to prepare food in the microwave and drives to the grocery store one to two times a month. (AR 52–53, 203, 220). He also reported that he sometimes needs help remembering to take medication but not for personal care. (AR 202–03). Additionally, Plaintiff reported not having problems getting along with others, getting along "good" with authority figures, never losing a job due to problems getting along with others, handling stress "good," and handling changes in routine "normally." (AR 223–24).

      C.     **Relevant Medical Evidence**

        1.   <u>State Disability Doctors:  David Clay Ph.D. and Helen Feldman Ph.D.</u>

Doctors Clay and Feldman reviewed Plaintiff's medical evidence for the State Disability Determination Service ("DDS"). (AR 90–91, 98–99). Considering whether Plaintiff met the Listings for Somatic Symptom and Related Disorders (Listing 12.07), Dr. Clay found no limitations in all four categories. (AR 91). Dr. Clay noted that Plaintiff's presentation was "within the broad normal limits. Mental concerns are not severe," and did not recommend any mental limitations. (AR 91). Dr. Feldman conducted a second review of Plaintiff's records for DDS. (AR 98–99). Considering whether Plaintiff met the Listing for Somatic Symptom and Related Disorders (Listing 12.07), Dr. Feldman found that Plaintiff was mildly limited in all four categories. (AR

3

99). Preparing a mental residual functional capacity assessment, Dr. Feldman opined that Plaintiff had no mental limitations. (AR 101).

    2.   <u>Barbara Kelly, Ph.D.</u>

Plaintiff saw Dr. Kelly for a psychological consultive examination on February 2, 2020. (AR 358). Dr. Kelly interviewed and examined Plaintiff, finding him poorly groomed but alert and cooperative. (AR 359). On examination, Plaintiff was able to state the date, month, and year but unable to recall the day of the week or the correct location of the examination. (AR 359). Plaintiff was able to name current and former presidents, spell the word "world" forwards but not backwards, perform serial twos but not serial sevens, recall three objects immediately but only two after a delay, and recall four digits forward and one back but not multiply nine by six. (AR 360). Dr. Kelly found Plaintiff unable to manage his own funds but did not further opine as to the severity of Plaintiff's functional limitations. (AR 358–60).

    D.   The ALJ's Decision

Before addressing the merits, the ALJ admitted additional written evidence provided by Plaintiff pursuant to 20 CFR 416.1435(b) but denied Plaintiff's request to (1) schedule a consultive examination with IQ and other psychological testing; and (2) add the prior record of Plaintiff's prior application to the record of this application. (AR 15–16).

The ALJ's five-step sequential analysis concluded with a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 36); *see* C.F.R. § 404.1520. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 19). At Step Two, the ALJ found degenerative disc disease-lumbar, morbid obesity, and learning disorder to be severe impairments. (AR 18).

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed at 20 C.F.R. Part 404, subpart P, Appendix 1. (AR 20–25). Specifically, the ALJ reviewed the severity of Plaintiff's impairments to determine if they met the Listing for Degenerative Disc Disease (Listing 1.04), or Mental Disorders (Listing 12.00). (AR 20–25). The ALJ addressed whether Plaintiff could meet each Listing under the Paragraph B criteria, (AR 20–25), and found that Plaintiff had "moderate" limitations in understanding, remembering or applying information, "mild" limitations in concentration, persistence or maintaining pace, as well as adapting or managing oneself, and no limitations in interacting with others. (AR 21–24).

Before proceeding to Step Four, the ALJ determined that Plaintiff retained the residual functioning capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b) except:

> Occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling. Never climbing ladders, ropes and scaffolds. Alternate sitting and standing at will for up to 30 minutes each while remaining on task and close to the workstation. Retains the ability to perform simple routine tasks on a continuous basis.

(AR 26). The ALJ found that Plaintiff was unable to perform relevant past work. (AR 34). Based on the testimony of the VE, the ALJ found that Plaintiff could perform the jobs of Information Clerk, Storage Clerk, and Cashier, and that a significant number of such jobs existed in the national economy. (AR 35–36). Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (AR 36).

### III.  LEGAL STANDARD

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are

5

supported by "substantial evidence." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotations omitted); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

6

At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original, citations and footnote omitted).

## IV.  DISCUSSION

On appeal, Plaintiff argues that the ALJ: (1) failed to fully develop the record by declining to order a new IQ test; (2) failed to address the impact of Plaintiff's intellectual abilities in the RFC analysis; and (3) erred at Step Five because the jobs identified by the VE require reasoning levels and general learning abilities beyond those possessed by Plaintiff. (Pla. Br., ECF No. 8 at 11, 17, 21). This Court finds these arguments without merit and, for the following reasons, will affirm the final decision of the Acting Commissioner.

### A. The ALJ did not abuse her discretion in declining to order a new IQ test.

Plaintiff argues that the ALJ failed to develop a full record and erred in declining to order a new IQ test to properly consider the impact of Plaintiff's intellectual functioning in determining his RFC. (Pla. Br., ECF No 5-2 at 13). This Court disagrees.

"ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). However, "[t]he burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citations omitted).

Further, the duty to fully develop the record "does not require [an ALJ to request] a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002). "The decision to order a consultative examination is within the sound discretion of the ALJ." *Id.*; *see* 20 C.F.R §§ 404.1520b(b)(2)(iii), 416.920b(b)(2)(iii) ("If the evidence in your case record is insufficient or inconsistent, we . . . *may* ask you to undergo a consultative examination at our expense."). "An ALJ has no duty to request commissioner sponsored examinations merely because existing records do not establish disability." *Ali v. Comm'r of Soc. Sec.*, No. 17-12911, 2019 WL 3369694, at *6 (D.N.J. July 25, 2019) (citing *Thompson*, 45 F. App'x at 149).

Here, the ALJ considered several years of objective medical evidence as well as the opinions of reviewing and consultive physicians, including consideration of the prior IQ testing, and determined that there was sufficient information to reach a disability decision. First, the ALJ explicitly considered Plaintiff's request for a new IQ test and found it was not necessary due to the

8

sufficiency of the evidence already in the record.[2] Second, the ALJ discussed and clearly considered the prior IQ testing. (AR 16, 25, 30). Third, as for medical evidence, the ALJ considered three years treatment records between 2017 and 2020, and the opinions of New Jersey State agency physiological consultants and a psychological consultive examiner all of whom made findings relating to Plaintiff's relevant mental limitations. (AR 31–34). Finally, the ALJ also considered and relied on Plaintiff's testimony about the tasks he could and could not perform as well as his prior work history in semi-skilled jobs. (AR 32). For all these reasons, this Court cannot find the record insufficient to make a disability determination. Thus, the ALJ did not abuse her discretion in not ordering a new IQ test. *See Haganey v. Comm'r of Soc. Sec.*, No. 17-7944, 2019 WL 192901, at *2 (D.N.J. Jan. 15, 2019) ("Plaintiff cites to no Third Circuit case law or authority to support the argument that the ALJ was required to order the consultative examination. The record was sufficient for the ALJ to make a proper determination. Thus, the ALJ was not required to send Plaintiff for a consultative examination and acted within his discretion.").

### B. The ALJ properly considered the impact of Plaintiff's intellectual deficits when determining his RFC.

Plaintiff argues that the ALJ failed to consider the impact of Plaintiff's intellectual functioning in crafting his RFC. (Pla. Br., ECF No 5-2 at 13). This Court disagrees.

"Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999));

---

[2] "[A]s to the consultative examination with IQ testing request, the claimant already underwent a psychological consultative examination in January 2020 (Exhibit B2F). While this examination did not include formal IQ testing (Exhibit B2F), the record contained more than sufficient evidence to make a decision on the merits in this matter." (AR 16).

9

*see also* 20 C.F.R. § 404.1545(a). Here, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 CFR 416.967(b) except:

> Occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling. Never climbing ladders, ropes and scaffolds. Alternate sitting and standing at will for up to 30 minutes each while remaining on task and close to the workstation. Retains the ability to perform simple routine tasks on a continuous basis.

(AR 26).

To formulate an RFC, an ALJ must consider all the relevant evidence, including the medical records, medical source opinions, and Plaintiff's allegations and description of their limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c) (2021). Plaintiffs have the burden of presenting evidence that they do not have the RFC to perform any substantial gainful activity. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1545(a)(3) (2021); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) ("The claimant bears the ultimate burden of establishing steps one through four.").

> Here, the ALJ found,
>
> [s]imply stated, despite a reported history of special education, a pre-application date finding of a full scale IQ of 75, obesity, symptoms, and potential medication side effects, the record fails to document any mental health treatment since the application date (other than a self-reported hospital presentation due to suicide attempt) and generally normal with only minimal findings. Further, the extent of the claimant's alleged limitations is not entirely consistent with the objective medical evidence. Further, the claimant was able to obtain and maintain employment at an SVP level 4 for at least 4 years.

(AR 31). In doing so the ALJ thoroughly reviewed Plaintiff's prior IQ results, history of special education classes, and self-reported symptoms. (AR 30–32). To the extent Plaintiff argues that his IQ score supports greater limitations in and of itself, the ALJ "is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record." *Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003). The only treatment Plaintiff reported was (1) having taken "Ritalin

and another psychotic medication in the past," and (2) a hospitalization for a suicide attempt in early 2020. (AR 30). The ALJ identified inconsistencies within Plaintiff's testimony regarding the hospitalization,[3] and found that—even if he presented at the hospital—these reports are not sufficient to find any type of extended treatment that would be indicative of a more severe impairment. (AR 30). The ALJ further pointed out that "the record fails to document mental health treatment via medication, the participation in a program for adults with learning difficulties, or counseling/cognitive therapy." (AR 30).

As for medical records and Plaintiff's own testimony—the ALJ thoroughly reviewed and considered both, highlighting the positives and negatives attributes of both in making her determination. (AR 31). Plaintiff presented generally normal on physiological examination with good orientation, alertness, and cooperation. (AR 285, 290, 295, 299, 304, 314, 318, 323, 333). While he was unable to perform some tests—serial sevens and threes, multiply nine by six, spell "world" backwards—he was able to perform others—serial twos, recall three items immediately, name current and former presidents, spell "world" forwards. (AR 359–60). Further, Plaintiff was able to complete all examinations without issue, presented well and again without issue at the hearing before the ALJ (AR 21, 285, 290, 295, 299, 304, 314, 318, 323, 333), and previously maintained employment at a job with an SVP level of four. (AR 21, 49).

Finally, the Court finds persuasive that the ALJ *did* find some mental limitations—limiting Plaintiff to simple routine tasks. (AR 26). This limitation is supported by substantial medical evidence in the record and, notably, is *greater* than the limitations recommended by State agency

---

[3] "The claimant also reported, in a document received on March 3, 2020, having had a 'hospitalization' after he reportedly tried to 'kill self' (Exhibit B3F/1) after he told a psychological consultative examiner on January 30, 2020 that he never had any psychiatric hospitalizations (Exhibit B2F)." (AR 30).

11

psychological consultants Doctors Clay and Feldman, who opined that Plaintiff did not have any mental limitations. (AR 90–91, 98–99).

Thus, for these reasons, the Court finds that the ALJ properly and thoroughly evaluated Plaintiff's mental limitations and this Court will not re-weigh the evidence carefully considered by the ALJ.

### C. The ALJ's Step Five findings are supported by substantial evidence in the record that indicates that Plaintiff is capable of the reasoning levels required for the jobs identified.

Plaintiff first argues that the ALJ's Step Five findings cannot be supported by substantial evidence because of the errors complained of above in the RFC analysis. (Pla. Br., ECF No. 8 at 22). "A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Having found no error in the ALJ's crafting of the RFC, the Court finds this argument without merit.

Plaintiff further argues that the ALJ erred by failing to resolve a conflict between Plaintiff's RFC, the VE's testimony, and the DOT's descriptions of the jobs identified. (Pla. Br., ECF No. 8 at 21–24). Specifically, Plaintiff argues that the ALJ failed to resolve conflicts between the reasoning level three required for those jobs and Plaintiff's RFC limitation of simple work. (Pla. Br., ECF No. 11 at 32–33).[4] This Court disagrees.

During a VE examination, "an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency

---

[4] "[J]obs with a reasoning level of 3 require that an employee be able to [a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) (internal quotations and citations omitted).

does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (quoting *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002)). The presence of inconsistencies is permissible if the ALJ's decision is otherwise supported by substantial evidence. *Rutherford v. Barnhart*, 399 F.3d 546, 558 (3d Cir. 2005); *Zirnsak*, 777 F.3d at 617; *Jackson v. Barnhart*, 120 Fed. App'x. 904, 906 (3d Cir. 2005) ("[E]ven if it was error for the ALJ to fail to solicit testimony about potential conflicts between this portion of the VE's testimony and the DOT, the error was harmless. Where substantial evidence supports the ALJ's opinion and where the failure to solicit the testimony contemplated in SSR 00–4p is harmless, this court will not reverse the ALJ's decision).

The Third Circuit has directly addressed this issue, finding that "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work," and the Court must instead look to whether the record indicates that a plaintiff could do such work to determine if there is a conflict. *Zirnsak*, 777 F.3d at 618; *see also Money*, 91 F. App'x at 215 (finding that a job that requires level two reasoning is not *per se* inconsistent with an RFC of simple, routine and repetitive work).[5] For example, in *Zirnsak*, an ALJ found that a plaintiff was limited to simple and routine work but also found her capable of performing jobs that required level three reasoning. *Id*. at 611. The Third Circuit found the ALJ's decision supported by substantial evidence because the record revealed that the plaintiff was capable of such work because she

---

[5] The qualification categories listed by the DOT include a General Educational Development ("GED") level, which measures "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Jean-Pierre*, 2017 WL 4316880, at *6 n.3. GED is broken into three categories: (1) reasoning development, (2) mathematical development, and (3) language development and the levels range from level 1 (the lowest) to level 6 (the highest). *See id.*

13

> completed tenth grade and testified that she received her GED or further education. [The plaintiff] also had previous experience working as both a clerk and a bookkeeper. Further, the "objective medical record [was deemed] unsupportive of the claimant's allegations of disabling mental impairments." At numerous evaluations during the relevant period, [the plaintiff] was noted to be "oriented," "calm," and "psychologically appropriate." She received only conservative treatment—primarily medication—during the relevant period. Finally, [the plaintiff's] own account of her daily activities was "relatively full and independent."

*Id.* at 618–19.

Here, it does not appear that the ALJ explicitly asked the VE whether the suggested jobs conflicted with the DOT. While it certainly would have been better practice for the ALJ to have done so, this failure is only harmless if no conflict exists. *Jean-Pierre v. Comm'r of Soc. Sec.*, No. 16-05691, 2017 WL 4316880, at *7 (D.N.J. Sept. 28, 2017) (citations omitted).

Because the record indicates that Plaintiff was able to perform these jobs, the Court finds there was no conflict. Plaintiff completed high school and was able to read and write, had previous full-time work experience at semi-skilled jobs, was not medicated or receiving therapeutic treatment during the relevant period, was consistently reported as having a "normal" mental status, alert, fully oriented, cooperative and without cognitive defect, and was able to drive himself and prepare meals. All of the jobs identified are classified as "unskilled," "which suggests that the jobs require minimal reasoning ability, regardless if they are classified at the 2 or 3 reasoning level." *Id.* at *7 (citing 20 C.F.R. § 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.")).

Thus, Plaintiff was capable of performing all three jobs identified by the ALJ—all of which are notably SVP 2, unskilled—despite his mental limitations. For these reasons, the Court does not find a conflict between the RFC and the VE's testimony, and even if there were, it would be harmless in light of the substantial evidence in the record detailing that Plaintiff can in fact perform jobs that require level three reasoning. Thus, the ALJ did not err in failing to elicit an explanation

14

or relying on the VE's testimony to make a disability determination. *See Plummer v. Apfel*, 186 F.3d at 431 (providing that a VE's testimony may be relied upon as substantial evidence to support the ALJ's decision, as long as the hypothetical presented to the VE "fairly set[s] forth every credible limitation set forth by the physical evidence.").

**V.     CONCLUSION**

For the foregoing reasons, the Court will affirm the final decision of the Acting Commissioner. An appropriate Order will be entered.

**Christine P. O'Hearn**
**United States District Judge**